Argued and submitted September 27; on appeal, sentences vacated and remanded
for resentencing, otherwise affirmed; affirmed on cross-appeal December 5, 2007

### STATE OF OREGON,
*Plaintiff-Appellant,*
*Cross-Respondent,*

*v.*

### DAVID CHARLIE WICK, JR.,
*Defendant-Respondent,*
*Cross-Appellant.*

Multnomah County Circuit Court
040532848; A129555

173 P3d 1231

Janet A. Klapstein, Senior Assistant Attorney General, argued the cause for appellant - cross-respondent. With her on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Susan F. Drake, Deputy Public Defender, argued the cause for respondent - cross-appellant. With her on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Before Edmonds, Presiding Judge, and Wollheim and Sercombe, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Defendant was convicted of first-degree sodomy and first-degree sexual abuse. At sentencing, the court refused to impose consecutive sentences on the ground that it would be required to engage in judicial factfinding in violation of the Sixth Amendment to the United States Constitution under the principles enunciated in *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), and *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000). The state appeals, arguing that the trial court erred in refusing to either impose consecutive sentences on its own findings or empanel a jury to make the requisite factual findings. Defendant cross-appeals and assigns error to an evidentiary ruling by the trial court. We reject defendant's arguments on cross-appeal without discussion and, for the reasons stated below, remand for resentencing on the state's appeal.

Defendant waived a jury trial and was tried to the court on two counts of first-degree rape, ORS 163.375; one count of first-degree sodomy, ORS 163.405; and two counts of first-degree sexual abuse, ORS 163.427. The court found him guilty of the count of first-degree sodomy and the two counts of first-degree sexual abuse, and not guilty of the two counts of first-degree rape. Immediately thereafter, defendant's counsel stated that defendant was ready to proceed with sentencing. The prosecutor, however, indicated that the state intended to seek consecutive sentences, and the court postponed sentencing so that the state could obtain a presentence investigation report (PSI).

When sentencing proceedings recommenced, the court raised concerns about its authority to impose consecutive sentences under ORS 137.123(5). That statute provides:

"The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"(a) That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the

commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

"(b) The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct."

ORS 137.123(5). The court noted that, if the reasoning in *Blakely* were to extend to the issue of consecutive sentences, then ORS 137.123(5) would require the court to engage in impermissible factfinding. In response, the state argued that *Blakely* did not apply at all to the imposition of consecutive sentences. The court noted that Oregon circuit court judges had "gone both ways" on whether *Blakely* applied in that context and suggested that the parties further brief the question. The court explained:

"My inclination is to set it over for purposes of getting the *Blakely* decision right. If I weren't contemplating consecutive sentences in this case, it wouldn't be necessary, but I think that there is a good argument for at least some of this to be consecutive, based on what I've seen in the PSI."

Over defendant's objection, the court again postponed sentencing.

Sentencing continued on July 20, 2005. By that time, Senate Bill (SB) 528 (2005), legislation designed to provide a procedure to submit sentencing issues to a jury as required by *Blakely*, had become effective and applied to defendant. Or Laws 2005, ch 463, *compiled as a note before* ORS 136.001 (2005).[1] In light of the new legislation, the state took alternative positions. First, it reasserted that *Blakely* did not apply to the imposition of consecutive sentences. Second, it requested that, if the court were to conclude otherwise, a jury be empaneled to address the relevant factual questions.

---

[1] SB 528, by its terms, applies to "[a] criminal action commencing prior to the effective date of this 2005 Act [July 7, 2005] in which a sentence has not been imposed prior to the effective date of this 2005 Act[.]" Or Laws 2005, ch 463, § 21(2).

In response, defendant argued that, even though SB 528 could apply to him to provide the jury trial right recognized in *Blakely*, the state had failed to give reasonable notice of its intent to seek consecutive sentences as required by the new legislation. SB 528 provides, in part, that

"to rely on an enhancement fact to increase the sentence that may be imposed in a criminal proceeding, the state shall notify the defendant of its intention to rely on the enhancement fact by:

"(1) Pleading the enhancement fact in the accusatory instrument; or

"(2) Within a reasonable time after filing the accusatory instrument, providing written notice to the defendant of the enhancement fact and the state's intention to rely on it."

Or Laws 2005, ch 463, § 2. According to defendant, the indictment did not notify him that the state would seek consecutive sentences, and the state did not otherwise provide defendant with timely written notice of any "enhancement fact," which SB 528 defines as a "fact that is constitutionally required to be found by a jury in order to increase the sentence that may be imposed upon conviction of a crime." Or Laws 2005, ch 463, § 1(2). Thus, in defendant's view, because of the lack of notice, neither a jury nor the sentencing court was authorized to find the enhancement facts necessary to impose consecutive sentences.[2]

Although the court was inclined to impose consecutive sentences, it agreed with defendant that it could not make the requisite findings itself or empanel a jury. The court reasoned that, under the principles enunciated in *Blakely*, defendant had the constitutional right to a jury determination of the facts justifying consecutive sentences. The court further reasoned that the state had not provided

---

[2] By its terms, SB 528 provides that a written waiver of the right to a jury trial on the issue of guilt or innocence also "constitutes a written waiver of the right to a jury trial on all enhancement facts whether related to the offense or the defendant." Or Laws 2005, ch 463, § 5. The trial court concluded that, because defendant had waived his rights before SB 528 was effective, the waiver could not have been a voluntary relinquishment of a known right. That determination is not at issue on appeal.

adequate notice to defendant under SB 528 and that the court therefore could not empanel the constitutionally required jury. The court then sentenced defendant to 100 months in prison on the sodomy conviction and concurrent terms of 75 months in prison on the sex abuse convictions.

■       On appeal, the state argues that the trial court erred in refusing to impose consecutive sentences based on its own findings or, alternatively, in refusing to empanel a jury to find the facts required for imposition of consecutive sentences under ORS 137.123. The state's initial argument—that *Blakely* does not apply to the imposition of consecutive sentences under ORS 137.123—was recently foreclosed by the Supreme Court's decision in *State v. Ice*, 343 Or 248, 170 P3d 1049 (2007). In *Ice*, which was decided after oral argument in this case, the Supreme Court held that the imposition of consecutive sentences based on judicial factfinding indeed violates the Sixth Amendment under the reasoning of *Blakely* and *Apprendi*. In light of *Ice*, the sentencing court correctly declined to impose consecutive sentences based on its own judicial factfinding.

The remaining question is whether the sentencing court should have empaneled a jury to determine the factual predicate for consecutive sentences. The state contends that the "provisions of SB 528 do not indicate what form or how detailed the content of any notice of 'enhancement facts' must be, other than it be in writing." According to the state, it satisfied the notice requirement of SB 528 by providing defendant with a sentencing memorandum on July 18, 2005, that expressly advised the court and defendant that the state was relying on ORS 137.123 to justify imposition of consecutive terms and described the specific conduct that would support consecutive terms. The state concludes that, in light of the notice it provided to defendant, we "should remand the matter for further proceedings consistent with *Blakely* and SB 528."

We agree with the state that its sentencing memorandum satisfies the notice requirement of SB 528. The legislation, as explained above, allows the state to either plead the enhancement fact in the indictment or "[w]ithin a reasonable time after filing the accusatory instrument, provid[e]

written notice to the defendant of the enhancement fact and the state's intention to rely on it." Or Laws 2005, ch 463, § 2(2). Thus, for the memorandum to satisfy the notice requirement of SB 528, the memorandum must have (1) been provided within a reasonable time after the filing of the indictment; (2) been in writing; and (3) notified defendant of the facts that the state intended to rely upon to establish the basis for consecutive sentences.

Defendant does not dispute that the sentencing memorandum was in writing, nor does he argue that the memorandum failed to identify the enhancement facts that the state intended to rely on to establish the basis for imposition of consecutive sentences.[3] Rather, defendant contends that the notice—which came seven months after defendant was reindicted—was not provided "within a reasonable time." Thus, we are called upon to interpret the phrase "reasonable time after filing the accusatory instrument" in a manner that effectuates the legislature's purpose underlying SB 528.

■ At the time that defendant was convicted of first-degree sodomy and sexual abuse, SB 528 was not yet effective. At that point, the state had no statutory or constitutional obligation to plead the enhancement facts in the indictment before submitting those facts to the jury. *See State v. Heilman*, 339 Or 661, 670-72, 125 P3d 728 (2005) (rejecting the argument that *Apprendi* required sentencing enhancements to be pleaded in an indictment); *State v. Upton*, 339 Or 673, 678, 125 P3d 713 (2005) (holding that, before the enactment of SB 528, courts had authority under ORS 136.030 and ORS 136.320 to empanel juries to determine enhancement facts). As a result of multiple continuances, defendant ultimately was sentenced after the effective date of the legislation. The state provided the sentencing

---

[3] At one point in his brief, defendant asserts that "[t]he state did not notify defendant of its intent to request consecutive sentences when it filed its July 18 memorandum, more than seven months later." We understand that sentence, in the broader context of his argument, to relate to the timing of the notice rather than its content. In any event, we conclude that the sentencing memorandum, which recited the terms of ORS 137.123 and identified the specific factors that would justify consecutive sentences in this case, sufficiently notified defendant of "the enhancement fact and the state's intention to rely on it" as required by SB 528.

memorandum to defendant 11 days after the effective date of SB 528. Under the circumstances, we conclude that it was provided within a "reasonable time" after the filing of the accusatory instrument, as the legislature intended.

■    To conclude otherwise would frustrate the legislature's intent concerning SB 528. As the Supreme Court explained in *Upton*, SB 528 was intended to effectuate a criminal defendant's Sixth Amendment jury trial right. 339 Or at 686. SB 528 constitutes expansive legislation designed to determine the procedure by which defendants would receive the option of a constitutionally required jury trial on enhancement facts; it could not have been intended to create a loophole whereby a criminal defendant, because of the timing of his sentencing proceedings, could *refuse* the empaneling of a jury and thereby avoid the imposition of consecutive sentences.[4] In sum, the legislature intended SB 528 to apply to "a criminal action commencing prior to the effective date of [SB 528] in which a sentence has not been imposed prior to [July 7, 2005]." Or Laws 2005, ch 463, § 21(2). To carry out that intent, we must conclude that written notice of the state's intent to rely on certain enhancement facts was provided "within a reasonable time after filing the accusatory instrument" when it was provided 11 days after SB 528 became effective.

For the reasons stated above, we conclude that the trial court correctly refused to impose consecutive sentences based on its own judicial factfinding, but that the court should have afforded defendant the option of a jury trial as

---

[4] The breadth of SB 528 is further evidenced by the fact that it applies to "[a] case that has been remanded to a trial court that will result in resentencing for which a new sentence has not been imposed prior to the effective date of this 2005 Act." Or Laws 2005, ch 463, § 21(3). In that circumstance,

"[i]n order to rely on an enhancement fact * * * to increase the sentence that may be imposed upon remand of a case * * *, the state, within a reasonable time before resentencing, shall notify the defendant of its intention to rely on the enhancement fact by providing written notice to the defendant of the enhancement fact and the state's intention to rely on it."

Or Laws 2005, ch 463, § 22. Given the breadth of SB 528, there simply is no indication that the legislature intended, by way of the notice requirement, to create a class of defendants who could not receive enhanced sentences—*i.e.*, those defendants who were indicted long before the effective date of the Act but had not yet been sentenced—even though the state acted promptly in providing written notice of the enhancement facts after SB 528 went into effect.

contemplated by SB 528. Accordingly, we vacate defendant's sentences and remand for the trial court to sentence defendant pursuant to the procedures established by SB 528.

On appeal, sentences vacated and remanded for resentencing; otherwise affirmed. Affirmed on cross-appeal.